IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RODNEY W. HOJNOWSKI, JR. | : CIVIL ACTION |
|     Plaintiff | : |
| | : |
| v. | : No. 2:06-CV-01228-CMR |
| | : |
| PRIMECARE MEDICAL, | : |
| GRACE KARRER, | : |
| | : |
|     Defendants | : |

**PRETRIAL MEMORANDUM OF PLAINTIFF RODNEY W. HOJNOWSKI, JR.**

As required by the Court's Scheduling Order, dated June 29, 2007, plaintiff, Rodney W. Hojnowski, Jr. ("Plaintiff"), through its undersigned counsel, Fox Rothschild LLP, respectfully submits the following trial memorandum and will supply exhibits referenced herein if needed.

**I.      JURISDICTIONAL STATEMENT**

The United States District Court for the Eastern District of Pennsylvania has original jurisdiction over this matter under 28 U.S.C. § 1331. Plaintiff's action was brought pursuant to The Civil Rights Act of 1991, 42 U.S.C. § 1983.

**II.     STATEMENT OF FACTS**

    **A.     Background**

The present cause of action involves an obvious skin infection that the Plaintiff acquired in March 2005 while an inmate at the Berks County Prison. At the time of the incident, Primecare Medical, Inc. ("Primecare") was under contract with Berks County to provide medical care to the inmates at the Berks County Prison, and Grace Karrer ("Nurse Karrer") was a Primecare employee working at the Berks County Prison as a nurse.

On March 5, 2008, Plaintiff, who has no medical training, made a request for medical care and completed a Sick Call Request stating, "I have a lump on my upper left leg caused by an

ingrown hair I would like to have it checked please." When Plaintiff submitted the request, there were no obvious skin openings on his leg. Plaintiff characterized the swelling as a boil, which is an inflammation of the skin most commonly due to a localized infection with staphylococci ("staph"). Before Plaintiff's boil was treated, and after he submitted the Sick Call Request, Plaintiff woke up on or around March 6, 2008 to an obvious open, draining wound. At or about the same time as the eruption of this skin infection, the prison was experiencing an increase in open wounds.

On March 6, 2005, Plaintiff presented his open, draining wound to Nurse Karrer and requested medical attention. Karrer began her shift on March 5, 2005 at 10:00 p.m. and ended her shift at 6:30 a.m. on March 6, 2005. Nurse Karrer asked if Plaintiff had submitted a sick call slip. Plaintiff responded that he had, and Nurse Karrer told him he would have to wait to be seen at sick call. Nurse Karrer did not report or document Plaintiff's oral plea for medical care to anyone, including the oncoming shift. Over the course of Nurse Karrer's employment, Primecare has reprimanded and suspended Nurse Karrer for repeated mistreatment of inmates.

Plaintiff waited three (3) days before receiving medical treatment, and, during that time, he had to resort to stuffing non-sterile tissue paper into the open wound to cover it. By the time Plaintiff was seen by the Primecare medical staff, Plaintiff had developed a three and a half inch open wound, which reoccurred over the following months. Plaintiff was later diagnosed with Methicillin resistant Staphylococcus aureus (MRSA).

Plaintiff experienced considerable pain and discomfort and now has a permanent scar on his upper right leg.

Primecare had an Infection Control Policy in place at the Berks County Prison as of January 2003, although Primecare provided no training to the Primecare medical team or to the

inmates specifically related to the prevention of MRSA or staph infections.  MRSA is a highly contagious type of an antibiotic resistant bacterium, which is spread by skin-to-skin contact, openings in the skin and contact with contaminated items.  MRSA is common in confined spaces, such as hospitals, nursing homes and prisons.  MRSA colonize on the skin and symptoms manifest as skin infections, specifically as pimples or boils.  Reoccurrence of symptoms can be minimized through dressing skin lesions until healed, avoiding contact with other infected persons, and avoiding shared personal items.  Often, a MRSA infection can be very serious and develop into a deep-seated abscess, cellulitis, septic arthritis, necrotizing pneumonia and sepsis.  The Primecare medical team did not follow the Infection Control Policy with respect to MRSA because they decided that the policy only applied to diseases like hepatitis and HIV.  The Infection Control Policy states, "[t]he purpose of this policy is to maintain a system for the prevention and control of infections within Berks County Prison."  MRSA is an infection and nothing in the Infection Control Policy indicates that its application is limited or that it does not apply to MRSA.  The policy refers to staph infections stating, "[t]he [medical team] will consult with Public Health officials . . . when a situation of 'multiple spread' occurs (i.e. staph infection)."

    The Infection Control Policy required "concurrent surveillance of inmates . . . and reporting of infections."  The policy required that any inmate suspected of having an infectious or communicable disease be reported to the Contract Administrator and head nurse immediately.  Nurse Karrer did not report Plaintiff's condition to anyone.

    The policy provides an infection surveillance record should be maintained at the prison with documentation of each outbreak discovered.  Primecare did not report or record incidents of staph infections or MRSA in early 2005 and did not screen inmates suspected of MRSA.

PH1 2040429v1 06/16/08

Todd Haskins, Vice President of Operations for Primecare, testified that after June 2005 Primecare instituted a differential diagnosis of MRSA for all skin infections at the Berks County Prison, but had not done so prior to June 2005 because community-acquired MRSA (CA-MRSA) was "really not a major issue at that point." Nurse Karrer, Jesse Kirsch, a Physician's Assistant working for Primecare at the Berks County Prison who treated Plaintiff, and Plaintiff all testified that there were an increased number of open wounds at that time.

CA-MRSA was a prevalent and persistent problem in prisons across the country prior to early 2005. As early as 2003, correctional systems were developing guidelines for the management of MRSA, and the Federal Bureau of Prisons published guidelines for the management of MRSA infections in the correctional setting.

Although the 2003 Federal Bureau of Prisons guidelines are not currently available for printing, the Federal Bureau of Prisons updated these guidelines in 2005. The 2005 guidelines contain a section titled "What's New in the Document", which outlines the revisions from the guidelines previously published in 2003. According to this section, the Federal Bureau of Prisons made very few changes to the 2003 guidelines.

The section of the guidelines related to diagnosis – not named as a revised section in the "What's New in the Document" section – states "[c]orrectional health care providers should consider MRSA infection in the differential diagnosis for all inmates presenting with skin and soft tissue infections or other clinical presentations consistent with a staphylococcal infection." The guidelines further provide that "draining wounds must remain adequately dressed" and an inmate should "[a]lways seek medical attention if you develop a boil, red or inflamed skin, insect or spider bite, or a sore that does not go away." The Inmate Fact Sheet notes that an open wound "should be covered at all times with a bandage." The Centers for Disease Control and

Prevention has frequently addressed issues regarding community-associated MRSA in publications dating back to December 2000.

Outbreaks of MRSA infections were prevalent in prisons across the country as early as 2001, although Primecare did not have a MRSA policy in place at the Berks County Prison until June 2005. Attached to the MRSA policy that Primecare developed for the Berks County Prison in 2005 is the 2005 Federal Bureau of Prisons' MRSA guidelines. Todd Haskins testified that he utilized the Federal Bureau of Prison guidelines and materials regarding MRSA located on the CDC website to develop the MRSA policy for the Berks County Prison.

### III.  DAMAGES CLAIMED

Plaintiff seeks compensatory damages equal to an amount that will fairly and justly compensate Plaintiff for damages. In the event a verdict is returned for Plaintiff, but the jury finds Plaintiff has failed to prove compensatory damages, Plaintiff seeks nominal damages of $1.00. Plaintiff also seeks punitive damages.

### IV.  TRIAL WITNESSES ON LIABILITY

1. **Rodney W. Hojnowski, Jr.**
   c/o Christine Welsh, Esquire
   Fox Rothschild LLP
   2000 Market Street, Tenth Floor
   Philadelphia, PA  19103
   (215) 299-2000

2. **Grace Karrer**
   c/o Edward Cermanski, Esquire
   401 Penn Street, Suite 100
   Reading, PA  19601
   (610) 320-4663

3. **Paula Dillman**
   c/o Edward Cermanski, Esquire
   401 Penn Street, Suite 100
   Reading, PA  19601
   (610) 320-4663

5

    **4. Jessie Kirsch**
       c/o Rochelle M. Fedullo, Esquire
       Wilson Elser Moskowitz
       The Curtis Center, Suite 1130 East
       601 Walnut Street
       Philadelphia, PA  19106

    **5. Todd Haskins**
       c/o John R. Ninosky, Esquire
       Johnson, Duffy, Stewart & Weidner
       PO Box 109
       Lemoyne, PA  17043

    **6. Any and all witnesses listed by any other party in their pretrial memorandum**

## V. TRIAL WITNESSES ON DAMAGES

    **7. Rodney W. Hojnowski, Jr.**
       c/o Christine Welsh, Esquire
       Fox Rothschild LLP
       2000 Market Street, Tenth Floor
       Philadelphia, PA  19103
       (215) 299-2000

    **8. Any and all witnesses listed by any other party in their pretrial memorandum**

Upon permission, Plaintiff reserves the right to identify additional witnesses up to the time of trial upon proper notification to the Court and all parties.

## VI. SCHEDULE OF EXHIBITS

1. Comprehensive Health Services Agreement (0001-0014)

2. Redacted Primecare Medical Dispensary Card for Plaintiff (0059-0061)

3. Nursing Assessment for Skin Lesions and Rashes for Plaintiff (0062)

4. Sick Call Requests of Plaintiff (0026, 0028, 0030, 0036)

5. Bioreference Laboratory Report MRSA culture results (0040, 0042)

6. Redacted Medication Charting Record (0091-0100)

7. Berks County Prison Nurse's Schedule from 2/27/05 through 3/13/05

6

8. 3/7/07 disciplinary letter to Nurse Karrer from Primecare Medical

9. Inmate Communication Forms and documentation of complaints about Nurse Karrer

10. 3/15/06 Notes of Nursing Supervisor regarding Inmate Communication Forms

11. Notifications to Human Resources regarding investigation of Nurse Karrer

12. Notes regarding Nurse Karrer disciplinary actions

13. Nurse Karrer Employee Counseling Forms

14. 1/6/03 memorandum from Kelly Halford to Richard Smith regarding Nurse Karrer

15. Statement by Judith Edwards regarding Nurse Karrer

16. 6/2/03 memorandum from Kelly Halford regarding discipline of Nurse Karrer

17. 6/19/97 Employee Counseling Form for Nurse Karrer

18. 1/22/02 Notes and General Report Form regarding discipline of Nurse Karrer

19. Primecare Medical Company Policy Operating Manual (0110-0183)

20. All documents produced by Primecare Medical, Inc. in response to Plaintiff's request for production of documents

21. Primecare Medical, Inc.'s Answers to Plaintiff's interrogatories

22. Anatomical models, charts, diagrams and/or illustrations of those relevant portions of the human body pertaining to the subject matter of this case.

23. Other demonstrative exhibits for use at trial to assist in testimony of witnesses.

24. Deposition transcripts:
    a. Grace Karrer
    b. Jesse Kirsch

    c. Todd Haskins.

25. Medical literature and articles on the relevant medical issues.

26. All documents exchanged between the parties during discovery that the Court deems admissible.

27. Any and all exhibits listed in the pretrial memorandum and/or exhibit lists of all other parties.

Upon permission, Plaintiff reserves the right to identify additional exhibits up to the time of trial upon proper notification to the Court and all parties.

## VII. ESTIMATE OF TRIAL

2 days

## VIII. LEGAL ISSUES

### 1. Plaintiff Has A Viable Cause of Action Against Nurse Karrer Under Section 1983.

Nurse Karrer should be held liable under 42 U.S.C. § 1983 because she was deliberately indifferent to Plaintiff's serious medical need, which caused a violation of the Eighth Amendment right to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 106 (1976) (finding where plaintiff alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs", a violation of the Eighth Amendment right to adequate medical care will be found); see also Natale v. Camden County Correctional Facility, 318 F.3d 575 (3d Cir. 2003) (stating "a reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs"). "Either actual intent or recklessness will afford an adequate basis to show deliberate indifference." Estelle, 429 U.S. at 105.

Evidence that the need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention" is sufficient to demonstrate a serious medical condition. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quotations omitted). Further, "the plaintiff need not present verifying medical evidence to show that even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable period." Blackmore v. Kalamazoo County, 390 F.3d 890, 899-900 (6th Cir. 2004). Deliberate indifference to a serious medical condition is present where "an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury." Glazewski v. Corzine, 2007 WL 3267763 (D. N.J. 2007).

Here, Plaintiff's obvious open, draining wound was a serious medical condition that required immediate medical attention, particularly with the existing wound problem the prison was experiencing. Often, a MRSA infection can be very serious and develop into a deep-seated abscess, cellulitis, septic arthritis, necrotizing pneumonia and sepsis. The healthcare community at large recognized community-associated MRSA to be a serious problem as early as 2003 and outbreaks of MRSA infections were prevalent in prisons across the country as early as 2001. At the time, the Federal Bureau of Prisons and the CDC recommended that open, draining wounds be covered at all times, and that individuals who develop an open wound, or boil, should seek medical attention. Further, the Federal Bureau of Prisons provided "[c]orrectional health care providers should consider MRSA infection in the differential diagnosis for all inmates presenting

9

with skin and soft tissue infections or other clinical presentations consistent with a staphylococcal infection."

Nevertheless, Nurse Karrer did not report Plaintiff's skin infection to any member of the Primecare medical staff. As a result of not receiving timely treatment, Plaintiff developed a three and a half inch open wound and suffered considerable pain. Thus, Nurse Karrer should be held liable for a civil rights violation under 42 U.S.C. § 1983 because she was deliberately indifferent to Plaintiff's serious medical need, which caused the constitutional violation at issue.

### 2. Plaintiff Has A Viable Cause of Action Against Primecare Under Section 1983.

Primecare's medical policies and procedures related to the treatment, monitoring and prevention of infections were deficient at the time Plaintiff contracted MRSA. The acts of Primecare's employees can be attributed to acts of Primecare itself where a relevant Primecare "policy or custom . . . caused the constitutional violation." Natale, 318 F.3d at 583. Moreover, Primecare may be held liable for the acts of its employees where it has failed to implement a policy and "the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice [is] so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Id. at 584 (citations omitted).

It should have been blatantly obvious to Primecare that its employees were not following the Infection Control Policy because, as the witnesses testified, they were not recording or reporting staph infections or MRSA incidents. The medical team took it upon themselves to decide that the policy did not apply to staph infections or MRSA. As a result, the Defendants were deliberately indifferent to Plaintiff's medical condition because they denied his reasonable request for medical care related to an obvious infectious disease, refused to follow their own

10

Infection Control Policy by failing to isolate him, and failed to report the condition to the Contract Administrator or head nurse.

Primecare implemented a MRSA policy in June 2005. Although Primecare alleges it followed the lead of the NCCHC, its "accrediting body", the only entity responsible for treating the medical needs of the Plaintiff was Primecare. The non-existence of a MRSA policy as of March 2005 and the failure to follow any infectious disease policy in this matter is outrageous, particularly in light of the public information that was available at the time regarding the risk of MRSA spread in confined settings, including prisons. Primecare failed to implement a policy and "the need to take some action" was so obvious and the "'inadequacy of existing practice [was] so likely to result in the violation of constitutional rights, that [Primecare] can reasonably be said to have been deliberately indifferent to the need.'" Natale, 318 F.3d at 584 (citations omitted).

## IX.     STIPULATIONS

Plaintiff and Primecare Medical, Inc. stipulate that Primecare Medical, Inc. is a state actors under Section 1983 and that this element of Mr. Hojnowski's claim against Primecare Medical, Inc. is not in dispute.

Respectfully submitted,


BY:     /s/ Christine Welsh
Jacqueline Carolan, Esquire
Identification No. 52576
Christine Welsh, Esquire
Identification No. 203497
FOX ROTHSCHILD LLP
*Attorneys for Plaintiff,*
*Rodney W. Hojnowski, Jr.*

Date:   June 16, 2008

## CERTIFICATE OF SERVICE

  I, Christine Welsh, Esquire, attorney for plaintiff, Rodney W. Hojnowski, Jr., hereby certify that a true and correct copy of the within Pretrial Memorandum was served by United States Mail, postage prepaid, on the parties listed below.

                    /s/ Christine Welsh, Esquire
                    Christine Welsh

Date:   June 16, 2008

John R. Ninosky, Esquire
Johnson Duffie Stewart & Weidner
301 Market Street
P.O. Box 109
Lemoyne, PA  17043-0109
Attorney for Defendant
Primecare Medical, Inc.

Edward J. Cermanski, Esquire
Ralph F. Touch, Esquire
Law Offices of Ralph F. Touch
401 Penn Street, Suite 100
Reading, PA  19601
Attorneys for Defendant,
Grace Karrer